FILED
United States Court of Appeals
Tenth Circuit

January 14, 2020

Christopher M. Wolpert
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

ALVARO A. BARRERA, a/k/a Alvaro
Barrera Barrera; a/k/a Alejandra Barrera
Barrera,

      Petitioner,

v.

WILLIAM P. BARR, United States
Attorney General,

      Respondent.

No. 19-9505
(Petition for Review)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **PHILLIPS**, **McHUGH**, and **EID**, Circuit Judges.
_____

Alvaro Barrera, a native and citizen of El Salvador, seeks review of a decision

by the Board of Immigration Appeals (BIA) that dismissed Barrera's appeal from a

removal order entered by an Immigration Judge (IJ).  Exercising jurisdiction under

8 U.S.C. § 1252, we grant the petition for review, affirm in part, and remand to the

BIA for further proceedings.

_____

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore
ordered submitted without oral argument.  This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel.  It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I. Background

Barrera applied for admission into the United States in 2017 and timely filed an application for asylum and other relief. She based her asylum application on claims of past persecution and a fear of future persecution due to her alleged identity as a transgender woman.

The IJ conducted an evidentiary hearing on Barrera's claims via videoconference. The IJ and a Department of Homeland Security (DHS) attorney participated from Colorado, while Barrera and her attorney participated from New Mexico. During the hearing, the DHS attorney and the IJ asked Barrera about inconsistencies between her testimony and (1) an I-870 worksheet containing notes of Barrera's own statements made during her credible fear interview, and (2) an I-867A form that recorded Barrera's sworn statement supporting her asylum application.

Because the government did not produce these documents before the hearing and did not bring Barrera to Colorado, Barrera did not see copies of the documents during the hearing. But when the documents' contents were described to her, Barrera confessed on the stand that they accurately recorded several lies Barrera told to government officials. Yet Barrera challenged whether the documents accurately recorded other statements she allegedly made that conflicted with her testimony.

At the end of the hearing, the IJ ordered the government to provide copies of the documents to Barrera "immediately." Admin. R., Vol. 1 at 467. He then gave Barrera 11 days to lodge objections to the documents and to make any request she might have to testify further. Barrera objected to admission of the documents and asked the IJ for a

2

follow-up evidentiary hearing to provide "additional re-direct testimony and closing argument." *Id.*, Vol. 2 at 823. But Barrera suggested "[i]n the alternative," that the IJ consider a written closing argument she provided "in lieu of an additional hearing." *Id.* The IJ did not hold a supplemental hearing but did consider Barrera's written closing argument.

The IJ found that Barrera "deliberately lied about parts of her story, and then provided an unbelievable account of why she lied." Admin. R., Vol. 1 at 319. He therefore found Barrera not credible and rejected her claims of past persecution. He further found that Barrera did not have a well-founded fear of future persecution, noting that "the evidence does not establish that the unique hardships transgendered women in El Salvador face amount to persecution." *Id.* at 320.

Barrera appealed these rulings to the BIA. As part of her appeal, she argued that the government violated her right to due process by failing to produce its impeachment evidence to her before or at the hearing and that the IJ erred by failing to conduct a competency assessment. The BIA affirmed the IJ's adverse credibility finding and his resulting rejection of Barrera's claims of past persecution. The BIA also dismissed Barrera's complaints regarding due process and competency. Regarding Barrera's well-founded fear of future persecution claim, the BIA "affirm[ed] the [IJ's] conclusion that while the record establishes that transgender women in El Salvador are subjected to pervasive discrimination, harassment, and some violence, it does not establish that the likelihood of the respondent being subjected to persecutory harm is sufficient to support a grant of asylum." *Id.* at 219.

3

The government asks us to affirm the BIA on most points but requests remand so that the BIA can clarify the following aspect of its decision with respect to Barrera's alleged well-founded fear of future persecution:

> [W]hether it was affirming the [IJ's] conclusion that Ms. Barrera would not be subject to harm rising to the level of persecution in El Salvador, or if it understood the [IJ's] decision to be a ruling that Ms. Barrera failed to establish the requisite *likelihood* that she will be subjected to persecutory harm.

Resp't Br. at 48–49.

## II.   Discussion

### A. This Case Should Be Remanded For Further Proceedings on Barrera's Well-Founded Fear of Future Harm Claim

A single member of the BIA issued the brief order that affirmed the IJ's decision.  The BIA order therefore "constitutes the final order of removal under 8 U.S.C. § 1252(a), and . . . this [c]ourt will not affirm on grounds raised in the IJ decision unless they are relied upon by the BIA in its affirmance." *Sidabutar v. Gonzales*, 503 F.3d 1116, 1123 (10th Cir. 2007) (internal quotation marks omitted).  It is important that we have clarity on the agency's rationale because this court is bound by the reasons given by the agency, and may not affirm on other grounds. *See Carpio v. Holder*, 592 F.3d 1091, 1103 (10th Cir. 2010).  If the agency "decides a case on a ground believed by an appellate court to be wrong, the case has to be remanded to the agency." *Elzour v. Ashcroft*, 378 F.3d 1143, 1150 (10th Cir. 2004) (internal quotation marks omitted).

4

We agree with the government that remand is appropriate for the BIA to clarify its finding regarding Barrera's claim that she has a well-founded fear of future persecution.

## B. Barrera Had A Reasonable Opportunity to Review Evidence and the BIA Should Decide Whether She Had A Reasonable Opportunity to Present Evidence

Barrera argues that the hearing before the IJ was fundamentally unfair because the government did not provide her with copies of the documents it used to impeach her until after the hearing and the IJ denied her request for an additional hearing.

### 1. *Legal Principles*

Removal proceedings must provide some procedural due process protections. *Reno v. Flores*, 507 U.S. 292, 306 (1993).  However, "[b]ecause aliens do not have a constitutional right to enter or remain in the United States, the only [constitutional] protections afforded are the minimal procedural due process rights for an opportunity to be heard at a meaningful time and in a meaningful manner." *Arambula–Medina v. Holder*, 572 F.3d 824, 828 (10th Cir. 2009) (internal quotation marks omitted).  Under the applicable statute, "the alien shall have a reasonable opportunity to examine the evidence against the alien, to present evidence on the alien's own behalf, and to cross-examine witnesses presented by the Government."  8 U.S.C. § 1229a(b)(4)(B).

### 2. *Barrera Had a Reasonable Opportunity to Review Evidence*

The IJ afforded Barrera a post-hearing opportunity to review the government's impeachment documents and gave her ample time to object to their admission on any

5

grounds.[1]  Although Barrera objected to the timing of their production, she did not

challenge the documents' authenticity or reliability.[2]  To the extent that the

documents' contents were at odds with Barrera's testimony in court, those

inconsistencies were accurately described to Barrera.  Indeed, Barrera does not allege

that the documents contained even one relevant fact that was not described to or known

by her at the hearing.[3]  Barrera nonetheless had the opportunity to make any desired

points about the documents in her closing argument that she submitted ten days after she

received copies of the documents.[4]  In these circumstances, we conclude that Barrera had

a reasonable opportunity to review the evidence presented against her.

---

[1] This right to review and object to the evidence, which Barrera exercised, distinguishes her case from the Seventh Circuit case she cites where the record did not show the alien was "actually able to see the document" in question at any point in time.  *Rapheal v. Mukasey*, 533 F.3d 521, 533 (7th Cir. 2008).

[2] Barrera relies on evidence outside the record to lodge belated attacks on the documents' reliability for the first time on appeal to this court.  We do not consider this evidence or the newfound arguments it allegedly supports.  *See* 8 U.S.C. §§ 1252(b)(4)(A) and 1252(d)(1).

[3] Barrera concedes that the government "was permitted to withhold [the] impeachment evidence until the hearing."  Pet'r Opening Br. at 34 n.8.  *Cf.* Fed. R. Civ. P. 26(a)(3)(A) (allowing parties to withhold impeachment evidence from pretrial disclosures).

[4] Barrera did not argue that she needed more time to investigate the documents' contents.  This distinguishes Barrera's case from one of the principal cases on which she relies, *Bondarenko v. Holder*, 733 F.3d 899 (9th Cir. 2013).  In *Bondarenko*, unlike in Barrera's case, the alien sought additional time to investigate the contents of the document in question.  *Cf. id.*, 733 F.3d at 905.

### 3. *The BIA Should Decide Whether Barrera Had a Reasonable Opportunity to Present Evidence*

The BIA's decision does not clearly address Barrera's argument that the IJ erred by rejecting her request for a supplemental evidentiary hearing. Because we are remanding this case to the BIA for additional proceedings on other grounds, on remand the BIA should also clarify its ruling with respect to this argument.

## C. The IJ's Failure to Conduct A Competency Inquiry Does Not Support Reversal

Under the BIA's current framework, "an alien is presumed to be competent to participate in removal proceedings." *Matter of M-A-M-*, 25 I. & N. Dec. 474, 477 (B.I.A. 2011). In *M-A-M-*, the BIA articulated how this presumption should be applied:

> [I]f there are no indicia of incompetency in an alien's case, no further inquiry regarding competency is required. The test for determining whether an alien is competent to participate in immigration proceedings is whether he or she has a rational and factual understanding of the nature and object of the proceedings, can consult with the attorney or representative if there is one, and has a reasonable opportunity to examine and present evidence and cross-examine witnesses.

*Id.* at 484.

We agree with the BIA that "the totality of the record . . . does not present concerns regarding [Barrera's] mental competency." Admin. R., Vol. 1 at 217. The evidence in the record demonstrates that Barrera had a rational and factual understanding of the nature and object of the proceedings. Barrera completed an application for asylum and submitted a detailed declaration in support of that

7

application.  At the hearing on her application, Barrera testified extensively and cogently responded to numerous questions.

An attorney represented Barrera in connection with her application.  At the hearing, the attorney assisted Barrera in correcting errors in her application and in presenting evidence to the IJ.  Barrera's evidence included three certificates, an expert report on conditions in El Salvador, seven supplemental country conditions reports, and three newspaper articles.  It also included a psychological evaluation of Barrera, which made no mention of any concerns related to her competency. Barrera's attorney questioned every witness that appeared at the hearing and submitted a closing argument.  But Barrera's attorney never argued to the IJ that Barrera was incompetent, never asked the IJ to conduct a competency inquiry, and never suggested to the IJ that additional procedural safeguards were warranted in Barrera's case.

Most of the alleged indicia of incompetence identified by Barrera consist of statements Barrera made after being confronted with inconsistencies in her testimony and in an effort to explain those inconsistencies away.  These "stumbl[es]" and "glitches" "are more consistent with a prevaricating petitioner than with a mentally incompetent one." *Muñoz–Monsalve v. Mukasey*, 551 F.3d 1, 7 (1st Cir. 2008). Barrera also argues that her history of head trauma and diagnosis of post-traumatic stress disorder (PTSD) should have triggered the IJ's duty to conduct a competency inquiry.  But other than her self-serving testimony that the IJ found "unbelievable,"

Admin. R., Vol. 1 at 319, the record does not contain evidence linking her head trauma or PTSD to any memory problems or other indicia of incompetence.

Barrera's remaining alleged indicium of incompetence lies in a colloquy between Barrera and the IJ, through an interpreter. The colloquy began with the IJ asking a simple question: "[W]hen did you work for COMCAVIS-Trans?" *Id.* at 410. The interpreter responded by requesting permission to clarify the IJ's question.[5] The interpreter's clarification is not included in the record. But the transcript recorded Barrera's response as "I started to volunteer there in 2010 and then I started to work there fulltime in 2003." *Id.* This response led to an exchange between the IJ, the interpreter, and Barrera. After the interpreter made further clarifications that are not included in the record, the interpreter stated: "Your Honor, I, I'm not going to testify for her but I think this is what I understand the situation to be. She said that, from 2000 to 2010, she was educating herself so that she could work but it was in 2003 to 2010 that she actually worked." *Id.* at 411. The exchange reflects difficulties in communication but it does not evince Barrera's incompetence. Our conclusion in this regard is bolstered by our review of the entire hearing transcript, which contains more than 75 pages of Barrera's cogent testimony.

## D.  The BIA Properly Rejected Barrera's Implicit Motion to Reopen

On appeal to the BIA, Barrera submitted new evidence that she did not present to the IJ. Barrera argues that the BIA treated her inclusion of additional evidence on

---

[5] It is not clear from the transcript whether the interpreter ever asked this question, as posed by the IJ, to Barrera.

appeal as an "implicit motion to reopen," and abused its discretion in denying that motion. Pet'r Opening Br. at 37 n.9.

"We review the BIA's decision on a motion to reopen only for an abuse of discretion." *Infanzon v. Ashcroft*, 386 F.3d 1359, 1362 (10th Cir. 2004) (brackets and internal quotation marks omitted). "[M]otions to reopen immigration cases are 'plainly disfavor[ed],' and [the movant] bears a 'heavy burden' to show the BIA abused its discretion." *Maatougui v. Holder*, 738 F.3d 1230, 1239 (10th Cir. 2013) (quoting *INS v. Abudu*, 485 U.S. 94, 110 (1988)) (second alteration in original). "To merit reopening her case," Barrera "must demonstrate that if proceedings before the [IJ] were reopened, with all the attendant delays, the new evidence offered would *likely* change the result in the case." *Id.* at 1239–40 (alteration in original) (emphasis added) (internal quotation marks omitted).

Barrera's new evidence included an affidavit from a doctor who reviewed Barrera's medical records and noted that "Barrera has evidence of syphilis and *possible* neurosyphilis, without sufficient medical evaluation." Admin R., Vol. 1 at 243 (emphasis added). The doctor concluded that it was "*possible* that these medical problems . . . *could* interfere with Ms. Barrera's ability to provide information relevant to her asylum application." *Id.* (emphasis added). The evidence also included a report from a psychiatrist who examined Barrera after the hearing before the IJ. The psychiatrist diagnosed Barrera with PTSD, depression, adjustment disorder with anxiety, and "History of *potential* Traumatic Brain Injury secondary to reported head trauma." *Id.* at 248 (emphasis added). The psychiatrist also observed

10

that "Barrera report[ed] a number of factors which *could* impair her memory and concentration." *Id.* (emphasis added).

The BIA noted that while Barrera's new evidence "hints that [her] cognitive functioning may be affected by a medical issue, . . . it is far from definitive." *Id.* at 217. The BIA therefore concluded that Barrera "has not established how this evidence would change the outcome of her case." *Id.* We have reviewed the evidence and agree with the BIA's assessment. The BIA did not abuse its discretion by declining Barrera's invitation to reopen the case.

## E. We Lack Jurisdiction to Review The IJ's Adverse Credibility Determination

Barrera now argues that the IJ's adverse credibility determination should be reversed because the inconsistences in her testimony that the IJ relied upon either (1) were trivial, or (2) disappear when the entire record is considered. But Barrera did not make these arguments to the BIA. And while the BIA did review the IJ's adverse credibility finding, it did not address these arguments in its decision.

We generally lack jurisdiction to consider arguments that a petitioner did not present to the BIA. *See* 8 U.S.C. § 1252(d)(1); *see also Garcia-Carbajal v. Holder*, 625 F.3d 1233, 1237 (10th Cir. 2010) ("To satisfy § 1252(d)(1), an alien must present the *same specific legal theory* to the BIA before he or she may advance it in court."). In certain narrow circumstances, we do have jurisdiction to consider arguments that the petitioner did not make to the BIA *if*, among other things, the BIA clearly identifies the argument and explicitly addresses it. *Garcia-Carbajal*, 625 F.3d at 1238–39. Here, the

11

BIA did not either identify or decide the arguments Barrera presses on appeal and we therefore lack jurisdiction to consider them.

### III.  Conclusion

Barrera's petition for review is granted.  We affirm the BIA's rulings with respect to Barrera's opportunity to review the evidence presented against her, Barrera's competency, and Barrera's motion to reopen her case.  We remand this case to the BIA to clarify its finding with respect to Barrera's claim that she has a well-founded fear of future persecution and to decide whether the IJ should have granted Barrera's request for an additional hearing.

Ms. Barrera's motion for leave to proceed in forma pauperis is granted.

Entered for the Court


Carolyn B. McHugh
Circuit Judge