**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 26, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

PABLO SALDIVAR COLON,

     Petitioner,

v.

WILLIAM P. BARR, United States
Attorney General,

     Respondent.

No. 19-9558
(Petition for Review)

_____

**ORDER AND JUDGMENT***
_____

Before **HOLMES**, **PHILLIPS**, and **CARSON**, Circuit Judges.
_____

Pablo Saldivar Colon, a Mexican national, seeks review of a Board of

Immigration Appeals (BIA) decision affirming the denial of his application for

cancellation of removal. For the following reasons, we deny the petition for review.

I

In 2014, the Department of Homeland Security issued Mr. Saldivar a Notice to

Appear in removal proceedings, charging that he entered the United States in 1997

_____

     * After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
submitted without oral argument. This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel. It
may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

without lawful admission or parole. *See* 8 U.S.C. § 1182(a)(6)(A)(i). Mr. Saldivar conceded the charge but applied for cancellation of removal. This is a form of discretionary relief available to a non-citizen who demonstrates, among other things, that his "removal would result in exceptional and extremely unusual hardship to [his] spouse, parent, or child, who is a citizen of the United States." *Id.* § 1229b(b)(1)(D).[1]

To support his application, Mr. Saldivar testified before an immigration judge (IJ) that he was married with two U.S. citizen children. His claim of hardship focused on his twelve-year old son who was diagnosed with Attention Deficit Hyperactivity Disorder (ADHD). He indicated his son was being treated with medication that may not be available in Mexico. He also testified that if he was ordered to be removed, he and his wife would relocate with their son to Mexico, and although they had some assets to assist with the transition, they could not maintain the same standard of living for their son. Mr. Saldivar owns a construction company, and he explained that between his income and his wife's earnings from cleaning houses, they had managed to save approximately $237,000. He testified that they had also built a home valued at approximately $187,000, with nearly $67,000 in equity, and they owned several cars, construction equipment, and a boat he purchased for

---

[1] A non-citizen must also show he has been physically present in the United States for the ten years preceding his application, he was a person of good moral character during that time, and he has not been convicted of any disqualifying criminal offenses. 8 U.S.C. § 1229b(b)(1)(A)-(C). If a non-citizen satisfies the statutory criteria, he must then persuade the Attorney General to favorably exercise discretion and grant relief.

$4,500. Although Mr. Saldivar acknowledged he could use these assets to "start a new life in Mexico," Admin. R. at 190, he indicated the money would be depleted and they would face poverty after one year. He explained that he would have difficulty finding a job in Mexico because he was skilled in building houses from lumber, but in Mexico homes are constructed of concrete. He also testified that, in the United States, his son had his own home, his own bedroom, and he could shower any time he wanted, but, in Mexico, water was available only two hours twice a week. Mr. Saldivar added that, while his son could speak Spanish, he had a limited ability to read Spanish and primarily spoke English. Moreover, Mr. Saldivar emphasized that his son was born and raised in the United States, he has friends here, and his medication was helping him improve at school. By contrast, he testified that the place he was considering moving to in Mexico had recently been struck by an earthquake that destroyed the local school and many homes. Given these circumstances, Mr. Saldivar claimed his removal would result in hardship to his son.

After considering this and other evidence, the IJ denied relief and ordered Mr. Saldivar removed to Mexico. The IJ concluded that Mr. Saldivar would have warranted a favorable exercise of discretion, and he satisfied all the statutory criteria except that he failed to show the requisite level of hardship to his son. The IJ reasoned that Mr. Saldivar's son would suffer by having to relocate to a new country and lose the association of his older sister, but there was no evidence his medication was unavailable in Mexico, his parents would relocate with him, and his parents would have considerable resources to assist him in the transition.

The BIA affirmed. The BIA concluded that Mr. Saldivar failed to show his removal would result in exceptional and extremely unusual hardship to his son, because his son was physically healthy, his son's ADHD was being treated with medication, and there was no evidence the medication was unavailable in Mexico. The BIA further reasoned that Mr. Saldivar and his wife would accompany their son to Mexico and they would have significant assets to help with their relocation. Although Mr. Saldivar argued that the IJ's adverse hardship ruling was inconsistent with BIA precedent, particularly *In re Recinas*, 23 I. & N. Dec. 467 (BIA 2002), the BIA rejected his argument and distinguished *Recinas*. The BIA explained that, unlike the applicant in *Recinas*, whom the BIA determined demonstrated the requisite hardship because she was the sole provider to her six children and her entire family resided in the United States, Mr. Saldivar had only one qualifying child, both he and his wife contributed to their family's financial support, and even without his wife's income, he had considerable assets.

II

Mr. Saldivar now contends the BIA applied the wrong legal standard in concluding he failed to demonstrate hardship. He says that, in distinguishing *Recinas* based on his having only one qualifying child and considerable assets, the BIA effectively conditioned the availability of relief on him having more children and less financial resources. He points out the Third Circuit has remanded to the BIA under similar circumstances and argues we must do the same. For its part, the government contends we lack jurisdiction to review the discretionary hardship determination and

4

the petition otherwise fails to present a reviewable constitutional claim or question of law.[2]

We first consider our jurisdiction. This court lacks jurisdiction to review the "discretionary aspects of a decision concerning cancellation of removal," including whether removal "would result in exceptional and extremely unusual hardship to a qualifying relative." *Arambula-Medina v. Holder*, 572 F.3d 824, 828 (10th Cir. 2009) (internal quotation marks omitted). But we retain jurisdiction to review colorable constitutional claims and questions of law involving statutory construction. *See Diallo v. Gonzales*, 447 F.3d 1274, 1281-82 (10th Cir. 2006). Mr. Saldivar does not directly challenge a discretionary aspect of the agency's hardship determination. Rather, he raises the narrow legal question of whether § 1229b(b)(1)(D) limits eligibility for relief to non-citizens who are poor and have more than one qualifying relative. We have jurisdiction to consider this issue. Our review is de novo. *See Torres de la Cruz v. Maurer*, 483 F.3d 1013, 1019 & n.5 (10th Cir. 2007).

Congress has authorized the Attorney General to direct cancellation of removal to an otherwise eligible non-citizen who "establishes that removal would result in exceptional and extremely unusual hardship to [his] spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence." 8 U.S.C. § 1229b(b)(1)(D). "The statute is clearly written in the singular, and it

---

[2] The government sought to dismiss the petition in part for lack of jurisdiction. For the reasons explained in the text, we deny the government's motion to dismiss to the extent Mr. Saldivar presents a question of law that properly invokes our jurisdiction.

speaks without equivocation:  hardship may be established by reference to but one qualifying relative."  *Pareja v. Att'y Gen.*, 615 F.3d 180, 195 (3d Cir. 2010). "There is nothing in § 1229b(b)(1)(D) to suggest that eligibility for cancellation of removal . . . is in any way a function of how many qualifying relatives an alien has." *Id.* at 195-96.  Nor does the statute condition eligibility for relief on a non-citizen's ability to demonstrate he is poor, although economic considerations such as the prospect of a lower standard of living for a qualifying relative and the availability of financial resources to assist with relocation are certainly factors relevant to the hardship determination, *see Recinas*, 23 I. & N. Dec. at 468-69.

Yet Mr. Saldivar contends the BIA *required* that he have more than one child and fewer assets to qualify for relief.  He supports his claim by citing the following language from the BIA's decision, where it distinguished this case from *Recinas*:

> In *Recinas*, the Board granted cancellation of removal to an individual who was the sole provider for her six children, and whose entire family resided in the United States.  In this case, [Mr. Saldivar] has *only one child*.  In addition, both [Mr. Saldivar] and his wife are employed and contribute to the financial support of the household.  Even without his wife's income, however, [Mr. Saldivar] testified, as noted by the Immigration Judge, that *he has considerable assets*.

Admin. R. at 3-4 (emphasis added).  Mr. Saldivar contends this language shows the BIA committed legal error requiring a remand as the Third Circuit directed in *Pareja*.

*Pareja* considered similar language and concluded that the BIA's decision was ambiguous.  In that case, the Third Circuit described the BIA's decision as follows: "The BIA noted that the *Recinas* petitioner was the sole supporter of six children, and [she] had no support from her children's father.  By contrast, the BIA reasoned,

6

Pareja has one qualifying relative." *Pareja*, 615 F.3d at 196 (citation, alterations, and internal quotation marks omitted). Based on this language, the Third Circuit concluded that the BIA's decision was "susceptible to at least two broad interpretations," the latter of which reflected legal error:

> On the one hand, by citing how many qualifying relatives the *Recinas* petitioner had, the BIA simply might have meant that the *Recinas* petitioner had established hardship to each individual qualifying relative because her resources necessarily would have been spread more thinly than Pareja's, as Pareja is financially responsible for only one individual . . . . This approach would have been permissible under § 1229b(b)(1)(D). On the other hand, the BIA's decision also could be read to mean that the BIA thought *Recinas* was distinguishable on the ground that Pareja did not have as many qualifying relatives as the *Recinas* petitioner. If this reading accurately reflects the BIA's mode of analysis, the BIA committed legal error.

*Id.* Given the court's uncertainty, the Third Circuit remanded to the BIA for clarification and possible reassessment of the hardship showing. *Id.* at 196-97.

But this case does not present any such uncertainty. The BIA agreed with the IJ's determination that Mr. Saldivar failed to show his son would suffer the requisite level of hardship because his son was physically healthy, his ADHD was treated with medication, and there was no evidence the medication was unavailable in Mexico. The BIA further noted that Mr. Saldivar and his wife would accompany their son to Mexico and they would have considerable assets to help with the family's relocation. Given these circumstances, the BIA concluded that Mr. Saldivar failed to show exceptional and extremely unusual hardship. In reaching this conclusion, the BIA did not impose extra-statutory criteria for demonstrating hardship; it merely considered factors relevant to the hardship inquiry and determined that Mr. Saldivar

7

failed to make an adequate showing. It was only in response to Mr. Saldivar's

argument under *Recinas* that the BIA contrasted the number of children involved in

that case with Mr. Saldivar's case to distinguish Mr. Saldivar's relative financial

burden. As the BIA explained, the petitioner in *Recinas* was the sole provider of six

children and all her family lived in the United States; Mr. Saldivar, however, shared

the financial burden of caring for one child with his wife and, even without her

income, he had considerable assets to fulfill his financial responsibilities. Read in

context, the BIA's decision reflects no legal error.[3]

Mr. Saldivar also contends the BIA denied him due process by failing to

address all of his arguments. But this is not a colorable constitutional claim because

Mr. Saldivar merely disputes the adequacy of the BIA's analysis. *See Alzainati v.*

*Holder*, 568 F.3d 844, 851 (10th Cir. 2009) (holding that "a quarrel about the level of

detail required in the BIA's analysis [is] not a colorable due process claim"). To

explain, we describe in some detail the nature of his arguments before the BIA.

In the BIA, Mr. Saldivar raised a single claim that he adequately demonstrated

hardship. In support of his position, he raised two sub-arguments. He first discussed

what he described as a "trilogy of cases," including *Recinas*, in which he asserted the

BIA had established the standard for demonstrating exceptional and extremely

unusual hardship. *See* Admin. R. at 23-25. He argued that he satisfied this standard,

---

[3] Because the BIA did not rely on impermissible criteria in concluding that
Mr. Saldivar is ineligible for relief, we need not consider his argument that the BIA's
reliance on such criteria is not entitled to deference.

but the IJ improperly conditioned his eligibility for relief on the number of his qualifying relatives and his financial status. *See id.* at 20-23. He insisted that if the IJ had properly considered all relevant hardship factors under the standard established by *Recinas*, the IJ should have concluded that he demonstrated hardship. *See id*. at 26-30.

Second, insisting that he demonstrated greater hardship than was shown in *Recinas*, *see id.* at 32, Mr. Saldivar asserted that in several unpublished cases, the BIA had concluded that applicants demonstrated hardship despite having fewer children than the applicant in *Recinas*, *see id.* at 33-36. He asserted these unpublished cases effectively lowered the hardship standard, and thus, "if *Recinas* truly marked the 'outer limit' of what constitutes exceptional and extremely unusual hardship," *id.* at 36, then the BIA was obliged to reconcile its precedent, because these unpublished cases were inconsistent with *Recinas*.

Mr. Saldivar now contends he was denied due process because the BIA did not address his specific contention that the unpublished cases were inconsistent with *Recinas*. But his argument relies on the false premise—which we have already rejected—that the BIA conditioned his eligibility for relief on him having more qualifying relatives. Moreover, Mr. Saldivar's specific contention was merely part of his claim that he adequately demonstrated hardship under *Recinas*. The BIA rejected that claim, distinguished *Recinas*, and ruled that the IJ properly considered the relevant hardship factors in the aggregate. At bottom, Mr. Saldivar's due process argument is an improper attempt to circumvent the jurisdictional limitations to our

9

review by recasting his challenge to the agency's hardship determination as a constitutional claim. *See Arambula-Medina*, 572 F.3d at 828. To the extent he simply contends the BIA's analysis is deficient, "[t]he BIA is not required to write an exegesis on every contention," *Maatougui v. Holder*, 738 F.3d 1230, 1242-43 (10th Cir. 2013) (internal quotation marks omitted). "What is required is that [the BIA] consider the issues raised[] and announce its decision in terms sufficient to enable a reviewing court to perceive that it has heard and thought and not merely reacted." *Id.* at 1243 (brackets and internal quotation marks omitted)). The BIA's decision here is adequate to enable our review. Although Mr. Saldivar insists the IJ failed to follow *Recinas* and other BIA precedent, he effectively asks us to reconsider the agency's hardship determination, which we lack jurisdiction to do. *See Arambula-Medina*, 572 F.3d at 828. And lest there be any lingering doubt whether he has failed to assert a cognizable due process claim, a petitioner in immigration removal proceedings "has no liberty or property interest in obtaining purely discretionary relief," including cancellation of removal. *Id.*

III

The petition for review is denied.

Entered for the Court

Jerome A. Holmes
Circuit Judge

10